THE OLD NATCHEZ.

*(District Court, S. D. Mississippi.* 1881.)

1. DISMANTLED WATER-CRAFT—SALVAGE.
   Salvage services can be rendered to a dismantled steam-boat, moored on a navigable river, and undergoing alterations and repairs for the purpose of being fitted for use as a wharf-boat.

In Admiralty.

*Albert M. Lea,* for libellant.

*W. B. Pittman,* for claimant.

HILL, D. J. The questions for decision arise upon the libel, answer, and agreed state of facts, from which it appears—

That the vessel arrested was formerly used in navigating the Mississippi river; that she became unfit for that service and was dismantled of all her machinery and other appurtenances necessary for such use, leaving the hull, cabin, and outer construction; that she was purchased in this condition at Cincinnati, and by her owners removed to a landing near the city of Vicksburgh, for the purpose of being repaired and fitted for use as a wharf-boat for shippers and passengers upon and across the Mississippi river at Vicksburgh, or those shipped to and from said port upon vessels plying upon said river; that she was moored to the bank of said river by such cables and fastenings as are used upon steam-boats for said purposes, and was undergoing the necessary repairs and alterations to fit her for the uses intended; that there was moored to and fastened by her side a barge loaded with coal, which caught fire, and which fire communicated to the Natchez. Libellant, discovering the fire, went to the rescue, awoke the watchman on the Natchez, and with the aid of another, who came to their assistance, cut loose the burning barge, sent her adrift, and extinguished the fire on the boat. In this service they encountered considerable heat and smoke, and some personal hazard, and libellant now propounds his claim for compensation as a salvor. The owners of the boat deny that she is liable to any salvage charge whatever.

To entitle a salvor to compensation the article saved and upon which the charge is made must, at the time the services are performed, be upon or washed from the sea, or some navigable stream, and must be something used in navigating the stream or sea, or as

an article of commerce transported upon the sea or navigable stream, which includes all descriptions of water-craft used, or intended to be used, in conveying persons or property on or across such navigable stream, and the cargo transported thereon, or some article of commerce transported by being itself floated thereon. The liability depends upon the use then being made, or intended to be made, of the vessel or other article, and not upon the mere fact that it is at the time afloat.

In the case of *The Hendrick Hudson*, 3 Ben. 419, the boat, like the one in this case, had been used as other steamboats, but had been dismantled and used as a hotel and saloon at different places upon the Hudson river, and while being removed from one place to another it was necessary to have her pumped out to keep her afloat and enable her to reach the point where she was to be again stationed to be used for the same purpose. A claim was made for this service, and rejected for want of jurisdiction in the court; Judge Blatchford holding that to entitle a party to salvage compensation in admiralty the vessel or other thing must be in some way engaged in navigation or commerce, or must be so intended, although it may then be floating upon a navigable stream. This, I am satisfied, is the correct doctrine, and brings us to the question as to whether or not the Natchez was, at the time the service was performed, intended to be used in aid of navigation or commerce. Wharf-boats are buoyant upon the water, and fastened to the bank of the stream in such a manner as to form a communication between the land and the vessels loading or unloading, or receiving and landing passengers and freight, and are so constructed as to be capable of being removed from place to place so as to enable the vessels to land and receive their cargoes at any stage of the water, and in these respects are important aids to commerce and navigation, much more so than any kind of stationary wharf, and especially so upon the Mississippi river, whose banks are so changeable. Therefore, being floated upon the water and movable, and being in aid of commerce and navigation, I can see no reason why this kind of water-craft should not be liable to a charge for salvage. It is not necessary that the vessel or other thing should be at the time so employed. If she was intended for such use it is sufficient, as held in the case of *The Cheeseman* v. *Two Ferry-boats*, 2 Bond, 363.

I am satisfied that libellant is entitled to salvage compensation for his labors and risk in saving the property seized, but it is difficult, under the pleadings and agreed facts, to say how much. There is

no definite rule. It may be by a ratable portion of the value of the property saved, or it may be a sum in gross. The value of the property at the time is not fixed by the agreement. It is agreed that the boat cost $4,000 and the repairs $2,000; that she was insured for $5,000; and that recently, in negotiations for her purchase, claimants held her at $12,000; but what changes had been made in the value does not appear, or whether the boat was in fact worth that sum is not stated. It is agreed that the costs and repairs up to that time amounted to $6,000, and it is the value at that time and not subsequently that must be taken as a basis, if value is considered. It seems to me that, whether the amount be considered in gross or ratably according to value, $500 is a fair compensation to libellant for his services. The service was not long, nor is it claimed that there was much hazard. Libellant was the discoverer of the fire and mainly instrumental in the rescue. He is therefore entitled to a greater compensation than Stricker, who came to his aid. The watchman, whose dereliction of duty caused the danger, can claim nothing.

Libellant will be allowed the sum of $500 and full costs, for which let a decree be entered.

See same case on appeal, *infra.*