WOODRUFF *v.* ONE COVERED SCOW.[1]

(*District Court, E. D. New York.* February 18, 1887.)

1. WHARF AND WHARFINGER—FLOATING BOAT-HOUSE—MARITIME CONTRACT—
   LIEN.
   An implied contract for the wharfage of a floating boat-house is a maritime
   contract by reason of the subject-matter, and a lien attaches for the wharfage,
   enforceable in admiralty.
2. SAME—RATE—NEW YORK STATE STATUTE.
   *Held,* that the rate of wharfage fixed by the New York state statute regu-
   lating wharfage in New York and Brooklyn should be adopted here as the
   rate chargeable against the structure in question.

In Admiralty.

*J. E. Ludden,* for libelant.

*E. R. Chevalier,* for claimant.

BENEDICT, J. This is a proceeding *in rem* to enforce a lien for wharf-
age against a structure termed in the libel a scow. The facts are not in
dispute. The structure proceeded against consists of a float, made of
timbers, in width some 11 feet, and in length some 23 feet, constructed
to float in the water, and to support above the surface of the water a
floor and a house nearly the size of the float. One use of the structure
is to store within the house the oars and sails of small boats landing at
the float, and to afford persons a means of egress from small boats com-
ing to the slip to the adjoining wharf, and thence to the shore. This
structure was never used as a means of transporting upon it from place
to place either passengers or freight. It has for a long period been moored
alongside the libelant's wharf, in one of the slips of this harbor, being at-
tached to the wharf by lines, and there safely rising and falling with the
tide. For the use thus made of the libelant's wharf the libelant seeks to
enforce a lien.

The action is sought to be upheld by reference to the statute of the
state of New York, which fixes the rates of wharfage in New York and
Brooklyn, and gives a lien for the same. This statute, after fixing rates
of wharfage for certain kinds of vessels, proceeds as follows:

"And from every other vessel or floating structure other than those above
named, or used for transportation of freight or passengers, double the first
above rates; except that floating elevators shall pay one-half the first above
rates."

This provision is manifestly imperfect, and the question arises, what
effect can be given to the words, "or used for transportation of freight or
passengers." As the words read, they are without meaning, and if no
effect is to be given them, the statute, by the previous words "floating
structure" includes in its provisions the structure here proceeded against.
But if, as the claimant contends, the word "or" be stricken out, and the

word "and" inserted in its place, the previous words, "floating structure," will be so qualified as to exclude the structure here proceeded against; while, as the libelant suggests, effect may be given to all the words used, by inserting the words "any craft," after the word "or." So read, the statute would include the structure proceeded against.

It has been supposed by the advocates that this case must stand or fall, as one or the other of these constructions is placed upon the statute referred to. But while the statute, if construed as the libelant contends, would determine the rate of wharfage chargeable against this structure, the right of the libelant to maintain this action cannot depend upon the statute; for a statute of the state, while it may create a liability on the part of the owner of this structure to pay wharfage, and may attach a lien upon the structure to enforce such liability, cannot confer upon this court jurisdiction to enforce such a lien by a proceeding in admiralty. The jurisdiction of this court to entertain the present proceeding depends not upon any statute, but upon the question whether the implied contract to pay the libelant for the use made of his wharf by the structure in question is a maritime contract. If the contract be maritime, this court, sitting in admiralty, has jurisdiction to enforce it; otherwise not. The case in this aspect would be easily disposed of, if the structure in question could be held to be a ship or vessel; the supreme court having, in *Ex parte Easton*, 95 U. S. 68, held a contract for the wharfage of a ship or vessel to be maritime. But this structure, being stationary, and never employed in the transportation of freight or passengers from place to place upon the water, cannot be held to be a ship or vessel. The case therefore is not covered by *Ex parte Easton*. Neither in *Ex parte Easton*, nor in any other case to which I have been referred, has the precise question here involved been determined; nevertheless, the grounds upon which the decision in *Ex parte Easton* proceeds afford reason, in my opinion, to hold the present contract to be maritime in character. For it will be observed that the subject-matter is the same in the one case as in the other, save only in this: that the structure accommodated is not engaged in the transportation of passengers or freight from place to place upon the water. What the wharfinger furnishes, under contract with a ship or vessel, the libelant furnished to this structure, namely, a resting place, safe from the influence of currents and of tides, and this he did by means of a wharf, which is an incident to navigation. Moreover, the object of this resting place was to facilitate the landing of sails, oars, and persons from the small boats accustomed to use this structure, and engaged in navigation. The object sought to be secured by the contract with the libelant for the use of his wharf for this float was similar in character to the object sought to be secured by a contract for the wharfage of a ship. Furthermore, the structure itself, although not a ship or vessel in the legal sense, and perhaps not one of the other "kind of water craft," to which the supreme court, in *Ex parte Easton*, alludes as distinct from a ship or vessel, is used in connection with navigation on the water and the transportation on the water of passengers and freight, and in no other occupation.

If no boats had frequented this slip for the purpose of landing persons or goods this float would not have been there. It was there because the boats coming there required it, in connection with the navigation in which they were engaged. The use to which the float was put seems clearly maritime in character. The necessities which made a wharf necessary for the float were necessities of the sea, while the benefit derived from the use of the wharf by this structure inured to persons and things transported on the sea. These considerations appear to me to be sufficient to authorize a determination that a contract for the wharfage of such a structure is a maritime contract by reason of the subject-matter. The contract sued on being maritime, the jurisdiction of the admiralty to enforce it follows of course.

There remains the question whether the maritime law attaches to such a contract a lien for the wharfage. Upon this question there is little room to doubt. By the maritime law a lien for wharfage always attaches to a ship or vessel, and the reasons for the lien in the case of a structure like this are as forcible as in the case of a ship. Of course, if the libelant's construction of the state wharfage statute be adopted, a lien is created by that statute, and being attached to a maritime contract by the law, may be enforced in a court of admiralty as part of the contract. But whether such a construction of the statute is possible, the view I have taken of the case renders it unnecessary to decide.

The final question relates to the rate of wharfage which the libelant is entitled to charge. If the rate of wharfage of this structure as a floating structure be fixed by the statute, that is the rate to be enforced herein as being the rate contemplated by the parties. If, on the other hand, the state statute does not fix any rate of wharfage for such a structure as this, then the rate must be fixed by the court, and in that case no juster rate could be adopted, as it seems to me, than the rate which would be statutory if the statute be read as the libelant contends. I therefore adopt that rate as the just and proper rate of compensation for the wharf accommodation furnished by the libelant to the structure proceeded against. At that rate, as I understand it, there is due the libelant the sum of $584, and for that sum, with costs, the libelant may have a decree.