## WOOD et al. v. TWO BARGES et al.

(Circuit Court, E. D. Louisiana. May 9, 1891.)

1. ADMIRALTY—"SHIPS"—COAL-BARGES—POSSESSORY ACTION.

Coal-barges, which are rough, square-cornered boxes, from 165 to 180 feet long, about 26 feet wide, and 8 to 10 feet deep, and have no motive or propelling power, no master or crew, no tackle, apparel, or furniture, and no name, being generally designated by number, and which are not permitted to be enrolled or licensed under any law of the United States, and have no license, are not "ships," within the language of admiralty rule No. 20, and cannot be made the subject of a possessory suit, therein provided for.

2. SAME—MARINE TORT.

Where the claimant had negotiated with the libelant for the purchase of certain coal barges, and, being informed of the location and price, and that he could have them, if suitable, took possession at once, without advising the libelant, and the latter subsequently sold them to a third party, and seeks by action to recover possession, so as to carry out that contract, there is no such fraudulent taking by the claimant as will enable the libelant to maintain an action for a marine tort, and the action must be regarded as a possessory action only.

In Admiralty. Appeal from district court.

*T. M. Gill,* for claimant.

*W. S. Benedict,* for libelants.

PARDEE, J. Suit was commenced in the district court by filing a sworn libel, as follows:

"The libel of the commercial firm of Wood, Schneidau & Co., of this district, composed of Jno. A. Wood & Co., of Pittsburg, state of Pennsylvania, and of P. M. Schneidau of this city, in a cause of tort on navigable waters from the sea, against James Sweeney of this district, and as against the property hereinafter named, alleges and articulately propounds as follows, namely: (1) That at the dates hereinafter named your libelant was the owner of two vessels engaged in carrying merchandise on the Mississippi river and tributaries, known as boat No. 137, of the Marmie Company, and boat No. 205, of the firm of Lysle & Son. (2) That said barges had come from Pittsburg, in the state of Pennsylvania, to this port laden with coal, and had been unladen by your libelant, and when so unladen, were, by libelant, sold to the firm of Thomas Fawcett & Sons of this city, and paid for, but delivery thereof was not effected by reason of the acts hereinafter set forth. (3) That after such sale one James Sweeney of this city called at the office of libelant, and expressed himself as desirous of purchasing said barges, and, no authorized person being present, the said Sweeney proceeded to take possession of said barges, and did so, without delivery order. His brother, being the representative of your libelant at the landing where said boats were located, did, without an order, and contrary to law and right, give possession of said boats to said James Sweeney, and, notwithstanding said fact, said James Sweeney has taken possession thereof, and threatens to take and carry same away. (4) That the said barges were of the full value of $1,300, and now within the jurisdiction of this honorable court; and your libelant, as owner and vendor, not having made delivery, and delivery being demanded, has a maritime lien on said property, and is entitled to process to make perfect such right; that said property is movable, engaged in navigation upon navigable waters of this country, and they are entitled to a lien upon said property, as well as against said James Sweeney *in personam,* and for the possession of said property, with all damages sustained. (5) That all and singular the premises are true, and within the admiralty and maritime jurisdiction of the United States and of this honorable court. Wherefore libelant prays that admiralty

process in due form do issue to the marshal to take possession of the said vessels wherever the same may be found in this district, and that process do issue *in personam* to said James Sweeney, and that, after due proceedings, this honorable court do adjudge in favor of libelant for the amount of the aforesaid claim, with interest, damages, and costs, and render such other order as may be meet and proper in the premises, and he prays for all such other orders as to the court may seem proper and necessary herein."

Admiralty process issued, commanding the marshal to take into his possession two certain barges, which was executed; whereupon James Sweeney, claiming to be the sole owner of the said barges, appeared and gave bond for the release of the said barges, and thereafter filed an exception to the jurisdiction of the court. It does not appear that any process *in personam* issued.

The district court ordered the exception aforesaid to be referred to the merits, and thereupon James Sweeney, claimant, filed an answer, admitting that the libelants were the owners of the two empty coal-boats, numbered 137 and 205, which had been used as coal-boats on the Mississippi river, that they had come from Pittsburg, and been unloaded, but denying all knowledge of any sale to Fawcett & Sons, but alleging that the same were sold to the claimant. He answered, further, that he had purchased from the libelants at their place of business and office said empty coal-boats at the price and sum of $100; that the numbers and location of said boats were given to him, with instructions to take the same, and that he took possession of and removed the same on the day of the purchase; that said boats were only worth $100; that he is the lawful owner of them, having purchased, taken possession, and removed the same in good faith, and having tendered the purchase price. The facts seem to be that the libelants had in possession as agents two empty coal-boats for sale; that application was made to them on behalf of Sweeney to purchase empty coal-barges. The price and location of the two in question were given, and Sweeney was informed that he could have them if suitable. Thereupon Sweeney sent his tug-boat, took possession of the barges, and removed them to his own landing. About the same time the agent of Thomas Fawcett & Sons made an arrangement or contract with libelants to buy empty coal-barges, and particularly the two herein involved. Immediately upon this transaction being communicated to the libelants' office, notice was sent to Sweeney, informing him that the two barges had been sold to Fawcett. Sweeney's reply was: "You are too late; why didn't you tell us in time? The tug has gone after them, and got them already,"—which seems to have been true. Five days after Sweeney got possession, Schneidau & Co. sent a written order to Sweeney to deliver the barges, which was refused.

On the hearing of the case the district court gave judgment dismissing the libel, on the ground that the suit, "being a possessory action, wherein ownership is claimed by both parties, the proceeding *in rem* cannot be entertained."

Under the facts, as shown by the evidence in this case, the controversy is one for the possession and ownership of two empty coal-barges. The twentieth admiralty rule provides:

"In all petitory and possessory suits between part owners or adverse pro-
prietors, or by the owners of a ship, or the majority thereof, against the mas-
ter of a ship, for the ascertainment of the title and the delivery of the posses-
sion only,   *   *   *   the process shall be by an arrest of the ship, and by a
monition to the adverse party or parties to appear and make answer to the
suit."

By a very liberal construction the libel in this cause may be consid-
ered as brought under and according to the twentieth rule. The ap-
pearance and answer of claimant may be considered as a waiver of the
monition required by said rule, and the question of jurisdiction is thus
presented, to-wit: Are these two empty coal-barges ships, within the
meaning and proper construction of rule 20, so that they can be pro-
ceeded against as required by said rule? The evidence in the case
shows that coal-barges are rough, square-cornered boxes, from 165 to
180 feet long, about 26 feet wide, and 8 to 10 feet deep, especially made
for the transportation of coal down the Mississippi river and its tribu-
taries. They are usually sold with the coal, and when the coal is un-
loaded they are broken up for old lumber and fire-wood. Sometimes,
when in good condition, and if such boats are in demand, they are
towed back up the river, and used once more. They have no motive or
propelling power, no master nor crew, and none of the usual parapher-
nalia of a ship, nothing coming under the head of tackle, apparel, and
furniture; no name even, being generally designated by number. They
are not permitted to be enrolled or registered under any law of the
United States, nor have they any license. It is only by a violent pre-
sumption that they can be classed in any way as ships. The decisions
of the circuit and district courts with regard to admiralty jurisdiction
over things of this character are apparently not uniform. In consider-
ing the adjudged cases, attention should be paid to the character of the
particular case over which the admiralty jurisdiction is asserted or de-
nied. Keeping this distinction in view, the adjudged cases sustain the
proposition, in which I concur, that, for the exercise of jurisdiction in
possessory or petitory actions, barges such as are here involved cannot be
classed as ships, and, as such, by themselves, considered within and
under the admiralty jurisdiction. That they can be held, under proper
circumstances, within the admiralty jurisdiction in cases of certain mari-
time contracts,—towage, for instance,—in salvage cases, or in connec-
tion with a maritime tort, is not disputed; but, as for that matter, other
articles of property under proper circumstances may be the subject of a
maritime contract, or be subject to salvage services, and thus brought
within the admiralty jurisdiction; and many things, not pretending to
be ships, even constructions on land, may be brought within the admi-
ralty jurisdiction in connection with maritime torts.

The learned proctor for libelants in this case has made some effort to
show that this is a case of maritime tort, and not a possessory action, but
the facts do not sustain any such view of the case. Even if claim-
ant Sweeney had taken fraudulent possession of these empty barges, it is
doubtful whether a tort, within the jurisdiction of the admiralty, would
have been committed. The evidence, however, leaves no doubt of the

fact that Sweeney's original possession was in good faith, and with the consent of libelants' agent. His refusal to return the barges when demanded cannot be considered a maritime tort.

For these reasons the same decree will be entered in this court as in the district court, with costs of both courts to be taxed, and for which execution may issue after five days from the signing of this decree.