THE INTERNATIONAL.

(Circuit Court of Appeals, Third Circuit.   September 20, 1898.)

No. 5.

CUSTOMS DUTIES—DREDGES AND SCOWS.

A steam dredge and scows used in connection therewith are "vessels," within the meaning of Rev. St. § 3, and neither is dutiable under Act 1894, par. 177, as "manufactured articles," not specially provided for, and composed wholly or in part of metal.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

This was a libel in admiralty by N. K. and M. Connolly against John R. Read, collector of customs for the district of Philadelphia, to recover possession of the steam dredge International and two scows used in connection therewith.   There was a decree for libelants (83 Fed. 840), and the collector appeals.   Affirmed.

Francis Fisher Kane and James M. Beck, for appellant.

Frank P. Prichard, for appellees.

Before ACHESON and DALLAS, Circuit Judges, and BRADFORD, District Judge.

BRADFORD, District Judge.   The libel was filed in this case by Nicholas K. Connolly and Michael Connolly, trading as N. K. and M. Connolly, to recover possession of the steam dredge "International," and two scows used in connection therewith, known as "No. 1," and "No. 2," of which the libelants were owners, and which were alleged to be illegally detained by John R. Read, then collector of customs for the district of Philadelphia.   The dredge and scows were built in Canada and were towed from Halifax to Philadelphia; the dredge arriving at the latter port October 2, 1896, and the scows November 27, 1896, respectively.   The dredge and scows were seized by the collector of customs at the port of Philadelphia, and were held by him to enforce the payment of certain duties claimed to be due thereon under the tariff act of August 27, 1894 (28 Stat. 509).   The court below sustained the libel, decreeing that possession of the dredge and scows be restored by the collector to the libelants.   This is an appeal from that decree.   It is contended by the appellant that the dredge and scows were dutiable as "an article" or "articles" enumerated in that act, and were embraced in paragraph 177, imposing a duty of 35 per centum ad valorem upon "manufactured articles or wares, not specially provided for in this act, composed wholly or in part of any metal, and whether partly or wholly manufactured."   We are unable to adopt this view.   The dredge, as well as each of the scows, must, in our judgment, be regarded, for the purposes of this case, as a "vessel" within the meaning of section 3 of the Revised Statutes of the United States, and, as such, not subject to duty under the tariff act of 1894.   That section provides that "the word 'vessel' includes every description of water craft or other artificial contrivance used, or capable of being used, as a means of transportation on water."

The terms of this provision are broad and unqualified.   The word "transportation" is not expressly or impliedly limited to the carriage of passengers or merchandise for hire.   A pleasure yacht or an ice boat is a vessel within the meaning of the section, equally with a merchant-man or an ocean liner; although the ice boat be designed solely to keep navigation open, and the pleasure yacht may carry neither pas-senger nor merchandise for hire.   While the dredge was not intended or adapted for the carriage of merchandise or passengers, and did not possess the power of self-propulsion except to an inadequate extent through the use of its steam shovel or dipper as a paddle, it was nevertheless a water craft "used, or capable of being used, as a means of transportation on water."   Its permanent home was on navigable water, and it was intended and adapted for navigation and transpor-tation by water of its crew, supplies and machinery, from point to point, in carrying on the work of deepening and removing obstruc-tions from channels and harbors in aid of navigation and commerce. Admiralty jurisdiction attaches to such dredges.   Within the sphere of their activities they are subject to the maritime law of contracts and of torts and to the laws of navigation.   The scows also were water craft "used, or capable of being used, as a means of transporta-tion on water."   It is immaterial that they were to be laden with mud from the shovel or scoop of the dredge instead of ordinary mer-chandise.   They were designed to receive and transport mud by water in the course of rendering valuable maritime service.   Equally with the dredge they were vessels within the meaning of the statute.   In the case of The Conqueror, 166 U. S. 110, 17 Sup. Ct. 510, the court, recognizing that "vessels should be treated as a class by themselves, and not within the general scope of the tariff acts," used language, much of which may well be applied to the case in hand, as follows:

"Was the Conqueror dutiable under the tariff act of October 1, 1890 (26 Stat. 567)?   This act requires duties to be levied upon all 'articles' imported from foreign countries and mentioned in schedules therein contained, none of which schedules mention ships or vessels eo nomine.   An abstract fur-nished us of the corresponding clauses in all the principal tariff acts from 1789 to the present date shows that duties are laid either upon 'articles,' as in the present act, or upon 'goods, wares and merchandise,'—words which have a similar meaning.   Indeed, the words 'articles' and 'goods, wares and merchandise' seem to be used indiscriminately, and without any apparent purpose of distinguishing between them.   While a vessel is an article of personal property, and may be termed 'goods, wares and merchandise' as distinguished from real estate, it is not within either class, as the words are ordinarily used.   * * *   Not only is there no mention of vessels, eo nomine, in the tariff acts, but there is no general description under which they could be included except as manufactures of iron or wood.   * * *   Considering the hundreds of foreign vessels which enter the ports of the United States every day, it is incredible that, if congress had intended to include them in the tariff acts, it would not have made mention of them in terms more definite than that of 'manufactures.' "

The fact that dredges and scows are not subject to all the regulations and provisions of law applicable to vessels carrying passengers or merchandise for hire and engaged in foreign or domestic commerce, cannot affect their legal status as vessels or render them dutiable. The decree of the district court is affirmed.