THORNLEY & PITT ET AL. *v.* UNITED STATES (NO. 3352)[1]

United States Court of Customs and Patent Appeals, November 10, 1930

*George R. Tuttle* for appellants.

*Charles D. Lawrence,* Assistant Attorney General (*James R. Ryan* and *Ralph Folks,* special attorneys, of counsel), for the United States.

[Oral argument October 6, 1930, by Mr. Folks]

Before BLAND, Acting Presiding Judge, and HATFIELD, GARRETT, and LENROOT, Associate Judges; GRAHAM, Presiding Judge, not participating

LENROOT, Judge, delivered the opinion of the court:

This case involves an appeal by the importers, Thornley & Pitt et al., from a decision of the United States Customs Court, Third Division, overruling the protests herein.

There are two protests involved. The article covered by protest No. 254804–G is described in the consular invoice as "one pleasure sailing yacht *Pandora* with full equipment," etc. The appraiser's report described it as "a sailing yacht of 19 tons gross and 55 feet in length."

The article covered by protest No. 256310–G is described in the consular invoice as "one pleasure sailing yacht with full equipment," etc. The appraiser's report describes it as "a sailing yacht named the *Dolphin,* of 13.4 tons gross, 48 feet in length."

[1] T. D. 44428.

Both boats were brought to this country on board of steamers. The boats were carried on deck and the spars, sails, and other equipment, packed in cases, were carried in the hold.

The collector classified the articles as manufactures of wood and assessed thereon an ad valorem duty of 33⅓ per centum under the provisions of paragraph 410 of the Tariff Act of 1922, which reads as follows:

PAR. 410. Spring clothespins, 15 cents per gross; house or cabinet furniture wholly or in chief value of wood, wholly or partly finished, wood flour, and manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for, 33⅓ per centum ad valorem.

The articles were classified and assessed as entireties.

To the collector's classification the importers protested, the ground of each protest being stated as follows:

This vessel being a sailing yacht and not a motor vessel that she is a vessel as defined in R. S. No. 3 and not subject to duty under the Tariff Act. Reference is made to the *Conqueror* case (49 Fed. 99) and T. D. 17405, *The International*, 83 Fed. 840, affirmed in 89 Fed. 484; also see T. D. 24002, T. D. 30354.

The Customs Court overruled both protests and entered judgment accordingly. From this decision the importer appeals.

The oral testimony introduced upon the trial related only to the yacht *Pandora*, covered by protest 254804–G. The Customs Court in its decision said:

It appears that the boat covered by Protest 254804–G, the *Pandora*, is 66 feet 8 inches in length "on deck," with 12 feet 8 inches beam, total weight between 28 and 30 tons, including 14 tons of ballast. The entry specifies "1 pleasure yacht, 2 cases sails, 3 cases equipment, 2 pcs. masts, 5 pcs. spars." We note that the yacht license which was issued some months after the importation of the *Pandora* describes her as a yawl, one deck, two masts, register length 55.1 feet, * * * register·depth 8 feet, net tonnage 19 tons, built of wood at Oslo, Norway, in 1914.

As to the other boat, the subject of Protest 256310–G, we have no information other than what is afforded by the entry papers and the appraiser's special report on the protest. The entry sets out in parallel columns "1 hull, 3 Cs. 10 spars" and "1 pleasure yacht, mfg. wood." The appraiser's report describes it as "a sailing yacht named *The Dolphin* of 13.4 tons gross, 48 feet in length. It did not arrive under its own power but as cargo on the M/S *Buenos Aires*." This protest was submitted on the record in Protest 254804–G with the incorporation of the appraiser's report. Many of the details appearing in the testimony taken in protest 254804–G are manifestly inapplicable to this importation, but we think sufficient facts appear in the record for the purpose of decision and we shall decide both protests on the merits.

We agree with the Customs Court that, although no testimony was produced with regard to protest 256310–G, the record is sufficient to dispose of both protests upon the merits.

It is the contention of appellants that the articles involved are "vessels" within the meaning of section 3 of the Revised Statutes of the United States, and are not subject to duty under any provision of the Tariff Act of 1922. This section reads as follows:

SEC. 3. "Vessels" as including all means of water transportation. The word "vessel" includes every description of water craft or other artificial contrivance used, or capable of being used, as a means of transportation on water.

The contention of the Government is stated in its brief as follows:

This case presents but one question for determination by the court. It is the contention of the Government, appellee herein, that, in the condition imported, the pleasure yachts involved in this suit were incomplete and were, therefore, not "vessels," as contemplated by R. S. 3, *supra*, but, rather, they are dutiable as "merchandise" as contemplated by the Tariff Act, *supra*. Being composed in chief value of wood (R. 28), it is our contention that they are dutiable at 33⅓ per centum ad valorem, under paragraph 410, *supra*, as classified by the collector and as held by the lower court.

The sole question before us, therefore, is whether the fact that the spars and sails and other rigging of the boats were separately packed in the holds of the steamers carrying the boats on deck, rendered the boats in question so incomplete that upon arrival at the port of San Francisco they were not vessels within the meaning of said section 3 of the Revised Statutes.

The lower court in its opinion said:

* * * All the parts necessary to make the *Pandora* complete were brought in the same vessel, and when the masts were stepped and the sails bent she was ready for action. The fact that the various parts had to be put together to make the whole did not affect the standing of the importation as an entirety for duty purposes.

We think this is a correct statement, and it applies to both of the yachts here involved. The court continued:

On the other hand, in our opinion, it precludes their designation as vessels within the terms of the law in its present state.

With this conclusion we can not agree. We are clear that the articles in question, in their condition upon arrival, were vessels as fully as if they had been completely rigged upon the decks of the steamers before arrival, their masts stepped and sails bent. It is obvious that it would not have been practical to have so rigged them for shipment, and that the separation of the rigging was necessary for their transportation.

In the case of *Hitner Sons Co.* v. *United States*, 13 Ct. Cust. Appls. 216, T. D. 41175, the definition of the word "vessels" as used in said section 3 of the Revised Statutes was before this court. In that case the court said, after quoting a number of authorities upon the subject:

From these authorities some general conclusions may be deduced. In order to come within the definition of a "vessel" as fixed by section 3, Revised Statutes,

the service upon which the thing in question can engage must be a maritime service. It must have some relation to commerce or navigation, or at least some connection with a vessel employed in trade. It must be engaged in, or in some sense related to commerce and navigation. The fact that the structure has the shape of a vessel, or has been once used as one, or could by proper appliances be again used as such, can not affect the question. The test is the actual status of the structure as being fairly engaged in or *suitable for*, commerce or navigation and as a means of transportation on water. [Italics not quoted.]

So here, the yachts in question were, upon their arrival, "suitable for" navigation and maritime service, requiring only the stepping of the masts and the bending of the sails which were separately carried in the holds of the steamers. Indeed the articles which, as heretofore stated, have been classified and assessed as entireties, could have no other use than for purposes of navigation.

We hold that these boats, having a tonnage of 19 tons gross register and 55 feet in length, and 13.4 tons gross and 48 feet in length, respectively, with spars and sails for their complete equipment carried in the same shipment, are vessels, and not subject to duty under the Tariff Act of 1922.

Had the hulls of the yachts been transported alone, without spars, sails, and other equipment, or if it had appeared that the equipment was not complete to put the yachts in commission for navigation, or if it had been practicable to have transported the yachts with their equipment in place, and they were not so transported, a different question would have been before us, which it is unnecessary to discuss.

The judgment of the Customs Court is *reversed*.