THAYER *v.* UNITED STATES (No. 735).[1]

RACING SHELLS—MANUFACTURES OF WOOD.

Racing shells can not be held to be "vessels" in the sense in which that term is employed in section 3, Revised Statutes; and this is so without any attempt being made to set up a hard and fast rule as to what may or may not be deemed a "vessel" under that section. And a racing shell can be as little considered a "pleasure-boat" under paragraph 37, tariff act of 1909. The importation was dutiable as a manufacture of wood, under paragraph 215, tariff act of 1909.

United States Court of Customs Appeals, February 1, 1912.

APPEAL from Board of United States General Appraisers, Abstract 26110 (T. D. 31757).
[Affirmed.]

*Howard Stockton, jr.* (*Fish, Richardson, Herrick & Neave* of counsel) for appellant. *Wm. L. Wemple,* Assistant Attorney General (*Chas. Duane Baker* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

In June, 1910, the appellant entered at the port of Boston two 8-oared racing shells, each about 60 feet long and from 2 to 2½ feet

wide, with a draft when loaded of about 1½ feet. The importer was the manager of the Harvard University crew and the shells were for its use and are owned by the Harvard Athletic Association.

The collector assessed the merchandise for duty as manufactures of wood not specially provided for under paragraph 215 of the tariff act of August 5, 1909. The importer protested against this assessment, claiming that these racing shells were pleasure-boats within the meaning of section 37 of the same act and therefore subject to the tonnage tax thereby imposed.

The relevant provisions of section 37 are as follows:

SEC. 37. There shall be levied and collected annually on the first day of September by the collector of customs of the district nearest the residence of the managing owner, upon the use of every foreign-built yacht, pleasure-boat or vessel, not used or intended to be used for trade, now or hereafter owned or chartered for more than six months by any citizen or citizens of the United States, a sum equivalent to a tonnage tax of seven dollars per gross ton.

In lieu of the annual tax above prescribed the owner of any foreign-built yacht, pleasure-boat or vessel above described may pay a duty of thirty-five per centum ad valorem thereon, and such yacht, pleasure-boat or vessel shall thereupon be entitled to all the privileges and shall be subject to all the requirements prescribed by sections forty-two hundred and fourteen, forty-two hundred and fifteen, forty-two hundred and seventeen, and forty-two hundred and eighteen of the Revised Statutes and acts amendatory thereto in the same manner as if said yacht had been built in the United States, and shall be subject to tonnage duty and light money only in the same manner as if said yacht had been built in the United States. * * *

The sections of Revised Statutes referred to in section 37 of the tariff act above quoted are as follows:

SEC. 4214. The Secretary of the Treasury may cause yachts used and employed exclusively as pleasure-vessels, and designed as models of naval architecture, if entitled to be enrolled as American vessels, to be licensed on terms which will authorize them to proceed from port to port of the United States, and by sea to foreign ports, without entering or clearing at the custom-house. Such license shall be in such form as the Secretary of the Treasury may prescribe. The owner of any such vessel, before taking out such license, shall give a bond, in such form and for such amount as the Secretary of the Treasury shall prescribe, conditioned that the vessel shall not engage in any unlawful trade, nor in any way violate the revenue laws of the United States, and shall comply with the laws in all other respects. Such vessels so enrolled and licensed shall not be allowed to transport merchandise or carry passengers for pay. Such vessels shall, in all respects, except as above, be subject to the laws of the United States, and shall be liable to seizure and forfeiture for any violation of the provisions of this title.

SEC. 4215. All such licensed yachts shall use a signal of the form, size, and colors prescribed by the Secretary of the Navy; and the owners thereof shall at all times permit the naval architects in the employ of the United States to examine and copy the models of such yachts.

SEC. 4217. For the identification of yachts and their owners, a commission to sail for pleasure in any designated yacht belonging to any regularly organized and incorporated yacht club, stating the exemptions and privileges enjoyed under it, may be issued by the Secretary of the Treasury, and shall be a token of credit to any United States official, and to the authorities of any foreign power, for privileges enjoyed under it.

SEC. 4218. Every yacht visiting a foreign country under the provisions of the four preceding sections, shall, on her return to the United States, make due entry at the custom-house of the port at which, on such return, she shall arrive.

The Board of General Appraisers on hearing the protest sustained the action of the collector, and held that—

An 8-oar racing shell is neither a yacht, pleasure-boat, or vessel within the meaning of the statute invoked.

It is not contended that paragraph 215 is inapplicable if it be held that section 37 does not apply to the merchandise in suit.

The appellant invokes section 3 of Revised Statutes for the meaning of the word "vessel," which section is as follows:

SEC. 3. The word "vessel" includes every description of water craft or other artificial contrivance used, or capable of being used, as a means of transportation on water.

These racing shells were brought to this country on board the steamship *Cambrian*, of course are foreign built, and the importer contends that they are vessels within the meaning of section 3, above quoted. If they are vessels within the meaning of said section 3, it must be conceded that they are not articles of merchandise within the meaning of the tariff act, and therefore not dutiable under paragraph 215 thereof.

In *The Conqueror* (166 U. S., 110), in discussing this question, the Supreme Court said:

But the decisive objection to the taxability of vessels as imports is found in the fact that, from the foundation of the Government, vessels have been treated as *sui generis*, and subject to an entirely different set of laws and regulations from those applied to imported articles. By the very first act passed by Congress in 1789, subsequent to an act for administering oaths to its members, a duty was laid upon "goods, wares, and merchandise" imported into the United States, in which no mention whatever is made of ships or vessels; but by the next act, entitled "An act imposing duties on tonnage," a duty was imposed "on ships or vessels entered in the United States." * * * This distinction between "goods, wares, and merchandise" and "ships or vessels" has been maintained ever since, although the amount of such duties has been repeatedly and sometimes radically changed.

The case of *The Conqueror* involved the question of whether a steam yacht of some 370 tons burden, as we understand, was a manufactured article under the tariff law of October, 1890, or was a vessel under section 3 of Revised Statutes, and as such vessel exempt from tariff duties. The Supreme Court held it was a vessel within the meaning of the section, and discussing the question said:

We do not undertake to say that the same rule applies to canoes, small boats, launches, and other undocumented vessels, which are not used, or are not capable of being used, as a means of transportation on water, as the word "vessel" is defined in Revised Statutes, section 3. While these vessels have a limited capacity for transportation, they are ordinarily used for purposes of pleasure, and are not considered of sufficient importance to require them to be entered at the customhouse or to be entitled to the special protection of the flag. They are treated like other similar vehicles used upon land, and there are reasons for saying that these boats, which do

not ordinarily come of themselves into the country, but are imported or brought upon the decks of other vessels, are mere manufactures of other "articles," and are within the description of the tariff acts.

While some of the last-quoted language was unnecessary to the decision of the issue involved and therefore strictly speaking *obiter*, it is quoted not only as indicating the views of the Supreme Court with reference to the meaning of the section, but as suggesting a very proper interpretation thereof. To give to section 3 the meaning claimed by the importer here is to say that any artificial contrivance, however small, provided it is used or is capable of being used as a means of transportation on water for however short a distance, makes it a vessel under the statutes. Were this literally so there would seem to be no escape from the conclusion that the "dugouts" or the rude rafts of primitive man, capable only of transporting little weight and for short distances in smooth water, would be vessels within the meaning of said section. But when it is considered that there are other provisions in the statute relating to the ascertainment of tonnage, the registration or enrollment, as well as licensing of vessels, we think it is obvious that Congress could not have meant by section 3 that every artificial thing that floats on water and of sufficient buoyancy to be used as a means of transporting anything, however small, is a vessel in the eyes of the law, but must have meant that to be a vessel it must be capable of some substantial use as a means of transportation on water. A temporary, fugitive, impractical, although possible, use for transportation of articles or things of trifling weight in smooth water only and for short distances we do not think could possibly answer the call of the statute.

The question naturally arises, Have these racing shells, apart from the question of their being pleasure-boats, which will later be considered, risen to the dignity of a vessel capable of being used as a means of transportation on water? Admittedly they are not designed for transportation except of the crew of eight or nine men for the purposes of racing or of practice preliminary thereto. The term "racing shell" implies that use, and their construction confirms it.

It would hardly be expected that a racing shell would commonly be used for transporting persons or property from place to place to any substantial extent or for practical purposes. They are, rather, implements of a race between contending crews in the smoother waters, and the feature of transportation thereby is purely collateral. While we do not attempt to establish any hard and fast rule as to what may or may not be deemed a vessel within the meaning of section 3, it seems to us that these racing shells clearly are not.

In *The International* (83 Fed. Rep., 840), the District Court for the Eastern District of Pennsylvania said in substance that dredges and scows were vessels; that they were generally held to be within.

the jurisdiction of admiralty; that they were valueless except as water craft; that they carried cargoes and were capable of being used as a means of transportation, and referring to said section 3, the court observed that "it applies to whatever falls naturally within the scope of its terms." Its judgment was affirmed by the Circuit Court of Appeals for the Third Circuit in 89 Fed. Rep., 484.

The statute has also received consideration by the Treasury Department in T. D. 17373, where a yacht of not more than 2 tons burden which it was proposed to sail into port from a foreign port stood upon the same footing as did a larger vessel and was not "goods, wares, and merchandise" within the meaning of the tariff act. In T. D. 16667 the Department held that yachts sailing into any port of the United States from a foreign port were not dutiable under the tariff act of 1894.

The Board of General Appraisers in T. D. 30354 held that a gasoline launch 22 feet by 6 feet by 28 inches in dimensions was a vessel within the meaning of the section.

These references are made to illustrate the treatment of the question by those called upon in different capacities to interpret the meaning of the word "vessel" as used in section 3.

The importer, however, asserts that under the provisions of section 37 of the tariff act of 1909, above quoted, these racing shells are pleasure-boats and therefore entitled to the benefits and privileges therein accorded to the same. The section provides that a tonnage tax shall annually be levied and collected upon such pleasure-boats, but gives the owner thereof the option to pay in lieu of such tonnage tax a duty of 35 per cent ad valorem, and further provides that thereupon the pleasure-boat shall be entitled to all privileges and be subject to the requirements of the sections of Revised Statutes therein referred to.

These sections provide for and regulate the enrollment and licensing of yachts used as pleasure-vessels and designed as models of naval architecture if entitled to be enrolled as an American vessel. An examination of the sections discloses that it is contemplated such pleasure vessels shall be of sufficient stability and seaworthiness to enable them to proceed from port to port in this country or to foreign ports by sea.

It may not of necessity follow because Congress has extended to pleasure-boats the right to the benefits of the quoted Revised Statutes that such boats *must* be of sufficient seaworthiness and stability of construction to enable them to undertake a cruise from port to port, but it is, we think, strongly suggestive that it did not use the term as applicable to such boats as these racing shells. It is true their use in practice for races and while participating therein may give pleasure to the crew or to the spectators who may behold the practice or the

race, yet we do not think the word "pleasure" in the connection with "boat" refers to the pleasure or enjoyment of the beholder, but relates to the pleasure or enjoyment of those who occupy and use the boat itself. There is, of course, pleasure and enjoyment in the exhilaration which the vigorous physical exercise upon the practice spin gives to the boat's crew and the same may be said of the race, especially if they win, but to enjoy it they must be physically well and accustomed to the use of racing shells. The feeble, the immature, and the unskilled are precluded therefrom.

The great mass of people is from the very nature of things excluded from obtaining pleasure by the use of such boats as these racing shells. They are mainly if not wholly designed for purposes of athletic exercise and for the acquirement of skill and efficiency in the art of rowing and almost if not quite exclusively used for the purpose of boat racing as distinguished from a boat used for excursion or pleasure purposes in the ordinary acceptation of those words, and, we think, are not pleasure-boats within the meaning of the paragraph

There is another consideration, if one be necessary, which would seem to lead to the same conclusion. The record shows that the protestant has not ascertained the tonnage of these racing shells, but it is argued that the Revised Statutes provide how this may be done. We have examined the sections to which appellant's counsel has referred and others related thereto, and the irresistible conclusion therefrom to us is that they do not contemplate the ascertainment of the tonnage of such boats as these racing shells.

These statutes provide amongst other things for the registry of vessels whose tonnage is to be ascertained and that if not exceeding 50 tons burden a bond in the sum of $400 shall be given, one of the conditions of which shall be that in the event the vessel is by casualty or by an enemy or otherwise prevented from returning to the port to which she belongs, the certificate of registry shall, if preserved, be delivered up to the collector of the district, and further, if the vessel is sold or transferred while at sea, or at a foreign port, the certificate shall likewise be surrendered. The statutes referred to further provide that the certificate of registry must express certain particulars of measurements and provide in detail for elaborate measurements and calculations for the purpose of determining the tonnage, none of which does it seem essential to discuss here, but all of which, while it is *possible* some of them may be applicable to these racing shells, clearly indicate, we think, that Congress contemplated the tonnage provisions of the law to apply to vessels or boats of a character much more substantial, durable, and seaworthy than are obviously these racing shells. Revised Statutes, Title XLVIII, relating to registry and recording.

It follows that these boats are articles manufactured in whole or in chief value of wood and dutiable under paragraph 215.

The judgment of the Board of General Appraisers is *affirmed.*