(C. D. 971)

TREGONING BOAT CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided December 14, 1945)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Joseph A. Howard, Jr.*, and *Harold L. Grossman*, special attorneys), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

OLIVER, Presiding Judge: This is a suit against the United States in which the plaintiff seeks to recover the duties paid in connection

with the entry of what is described on the *pro forma* invoice as "1 unfinished 17 foot wood boat hull" which arrived at the port of Seattle on board a steamer as cargo.

Duty was assessed thereon at the rate of 33⅓ per centum ad valorem under the provision in paragraph 412 of the Tariff Act of 1930 for "manufactures of wood * * * or of which wood * * * is the component material of chief value, not specially provided for."

Plaintiff claims that the so-called "boat hull" is not subject to duty on the ground that it is a "vessel" within the definition contained in section 401 of the tariff act and 1 U. S. C. § 3, having reference thereby to the distinction generally made between "articles," upon which import duties are assessed, and "vessels" which, with certain exceptions, are considered not to be liable to the assessment of such duties, but to be governed by "an entirely different set of laws and regulations" (*The Conqueror*, 166 U. S. 110, 118, 41 L. ed. 937, 942).

The facts, which are not in dispute, are as follows: The boat hull in question was 17 feet long, 7 to 7½ feet in breadth, and approximately 30 inches deep. In the condition as imported it was equipped with oars and oarlocks, and though provision was made for a mast, none was imported with it. Sails and a rudder, as well as food, water, rope, and signaling equipment, were supplied in the United States. In its completed condition the hull was to be placed aboard a three- or four-thousand-ton vessel to be used as a lifeboat.

The record shows that in the condition in which it arrived it could accommodate 12 persons and was capable of being used for the purpose of transporting persons over water, including the high seas, and that it had been constructed in accordance with American and Canadian lifeboat laws for that purpose.

Section 3 of title 1 of the United States Code, under the heading "Rules of Construction," defines "vessel" as follows:

> The word "vessel" includes every description of water craft or other artificial contrivance used, or capable of being used, as a means of transportation on water.

As was said in the case of *The Conqueror, supra*, from the beginning of the Republic, Congress has treated ships and vessels arriving in the United States under a separate system of laws and regulations from those applied to imported articles. Whenever Congress desired to exclude certain craft from the category of "vessels" and levy customs duties thereon it has done so in specific terms, as in the case of paragraph 370 of the Tariff Act of 1930, which covers, among other things, motorboats as therein defined.

In this case there is an alternative claim that, if not exempt from duty as a "vessel," the so-called boat hull is dutiable at 15 per centum ad valorem under paragraph 370 as modified by the trade agreement

with Canada (T. D. 49752), but this claim is not pressed. The only question before us is whether it is dutiable under paragraph 412 as a manufacture of wood or whether it is a vessel within the meaning of 1 U. S. C. § 3 and not subject to duty under the tariff laws. In this connection, we find the latest expression of our appellate court in *United States* v. *Wepner*, 32 C. C. P. A. 30, C. A. D. 282, where the subject matter of the litigation was a pleasure motorboat, which was excluded from paragraph 370 because built prior to December 1, 1927. The court there said (p. 39):

* * * it obviously cannot logically be held that while excluding them [boats such as involved] from paragraph 370, it was the intent of Congress to leave them dutiable at an even higher rate under paragraph 412, and any administrative action * * * classifying them under paragraph 412 or otherwise levying customs duties upon them must be voided.

In the present case the fact that the lifeboat hull was not documented or subject to tonnage duties under the laws of the United States cannot affect its status as a vessel under 1 U. S. C. § 3 or render it dutiable. (*United States* v. *Porto Rico Coal Co.*, 17 C. C. P. A. 288, T. D. 43716, and *The International*, 89 F. 484.)

It is apparent, however, that not every craft which responds to the bare words of the definition quoted above would be entitled to entry into the United States without payment of duty. (*The Conqueror, supra; Thayer* v. *United States*, 2 Ct. Cust. Appls. 526, T. D. 32252; and *Hitner Sons Co.* v. *United States*, 13 Ct. Cust. Appls. 216, T. D. 41175.)

In the *Thayer* case, involving racing shells, the court said (p. 259):

* * * To give to section 3 the meaning claimed by the importer here is to say that any artificial contrivance, however small, provided it is used or is capable of being used as a means of transportation on water for however short a distance, makes it a vessel under the statutes. Were this literally so there would seem to be no escape from the conclusion that the "dugouts" or the rude rafts of primitive man, capable only of transporting little weight and for short distances in smooth water, would be vessels within the meaning of said section. But when it is considered that there are other provisions in the statute relating to the ascertainment of tonnage, the registration or enrollment, as well as licensing of vessels, we think it is obvious that Congress could not have meant by section 3 that every artificial thing that floats on water and of sufficient buoyancy to be used as a means of transporting anything, however small, is a vessel in the eyes of the law, but must have meant that to be a vessel it must be capable of some substantial use as a means of transportation on water. A temporary, fugitive, impractical, although possible, use for transportation of articles or things of trifling weight in smooth water only and for short distances we do not think could possibly answer the call of the statute.

In the *Hitner* case, which involved the former Canadian armored cruiser *Niobe*, Presiding Judge Graham, after reviewing the authorities, stated (p. 221):

From these authorities some general conclusions may be deduced. In order to come within the definition of a "vessel" as fixed by section 3, Revised Statutes,

the service upon which the thing in question can engage must be a maritime service. It must have some relation to commerce or navigation, or at least some connection with a vessel employed in trade. It must be engaged in, or in some sense related to commerce and navigation. The fact that the structure has the shape of a vessel, or has been once used as one, or could by proper appliances be again used as such, can not affect the question. The test is the actual status of the structure as being fairly engaged in or suitable for, commerce or navigation and as a means of transportation on water.

A lifeboat, such as that at bar, connected with a vessel employed in trade and commerce, is clearly suitable for use as a means of transportation on water. Recent history has shown numerous cases of long voyages on the high seas by lifeboats.

In the brief filed on behalf of the Government, it is asserted that substantial and material additions would have to be made to the importation "before same could be reasonably capable of being used as a means of transportation on water." This is contrary to the uncontroverted evidence of record that *at the time of arrival,* the lifeboat in question was capable of being so used. The fact that the method of propulsion would, at that time, have been by oars, since it had not yet been equipped with rudder, mast, and sails, is immaterial.

*Lawson* v. *Maryland Casualty Co.,* 94 F. 2d 193, cited by the Government, in construing the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S. C. A. § 901, et seq., held that a deceased harbor worker was "bound to no vessel as a crew member," and stated that a "rowboat less than sixteen feet long, capable of carrying three men, and propelled by one oar at its stern" was not a vessel having a crew within the meaning of that act.

That case construed a different provision of the law from that under consideration here, and is not in point. We do not therefore regard it as authority for the elimination of boats propelled by oars from the category of "vessels" or as holding that any particular size of boat falls within or without that category.

Finally, it is contended by the Government that:

\* \* \* The instant importation, a lifeboat, is by its very nature, character, and type, that class of boat which is constructed with the intention that it be utilized only for temporary and emergency use, and definitely not intended nor capable of substantial use as a means of transportation on water or of a substantial use in trade and commerce.

Under the definition of "vessel" contained in 1 U. S. C. § 3, as construed by the courts, present and continuous use as a means of transportation on water is not required; capability of practical and substantial use is sufficient.

The lifeboat in question was, on its arrival in the United States, a "vessel," and not being of the character of vessels specifically provided for in the tariff act, was not subject to duty thereunder. The protest claim is therefore sustained, and judgment will issue accordingly.