(C.D. 2325)

THORNLEY & PITT  
C. J. HENDRY CO. } *v.* UNITED STATES

## United States Customs Court, First Division

(Decided March 29, 1962)

*Lawrence & Tuttle* (*George R. Tuttle, Jr.*, of counsel) for the plaintiffs.
*William H. Orrick, Jr.*, Assistant Attorney General (*Murray Sklaroff* and
*Samuel D. Spector*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The issue in these cases is whether inflatable liferafts, composed in chief value of india rubber, which were imported as cargo and not as part of the appurtenances of the importing vessels, should be considered, for tariff purposes, "vessels" or as imported articles subject to duty. There is no provision of the tariff act which specifically exempts vessels generally from the payment of customs duties. In the case of *The Conqueror*, 166 U.S. 110, 41 L. ed. 937, in passing upon the tariff status as dutiable or nondutiable status of a foreign-built, American-owned steam yacht, the Supreme Court said, *inter alia*:

> Vessels certainly have not been treated as dutiable articles, but rather as the vehicles of such articles, and though foreign built and foreign owned, are never charged with duties when entering our ports, though every article upon them, that is not a part of the vessel or of its equipment or provisions, is subject to duty, unless expressly exempted by law. * * *

> \*       \*       \*       \*       \*       \*       \*

> But the decisive objection to the taxability of vessels as imports is found in the fact that, from the foundation of the Government, vessels have been treated as *sui generis*, and subject to an entirely different set of laws and regulations from those applied to imported articles. * * *

However, in this case, the collector of customs considered the liferafts at bar not to be vessels and assessed duty on them at the rate of 12½ per centum ad valorem under the provision in paragraph 1537(b) of the Tariff Act of 1930, as modified by T.D. 53865 and T.D. 53877, for—

> Manufactures of india rubber or gutta-percha, or of which these substances or either of them is the component material of chief value, not specially provided for.

By its protests herein, it appears that the plaintiffs' primary claim is that the liferafts are vessels within the rule expressed by the Supreme Court in *The Conqueror, supra*, and not subject to tariff duties. Alternatively, it is claimed in the protests that they are properly dutiable at only 6 per centum ad valorem under the provision in paragraph 370 of the tariff act, as modified by T.D. 54108, for "motor boats," but this claim is not pressed and will not be considered here.

The liferafts in question are designed for varying carrying capacities, from 8 men to 25 men each, and are all of the same general type. They are made of rubber-covered fabric, each with an inflatable floor. The sides consist of one or two inflatable tubes, 18 inches in diameter. There are inflatable arches which support a double-walled canopy having an opening at one end.

Inflation is accomplished by means of carbon-dioxide cylinders and valves, part of the equipment of each raft, which can be actuated either automatically or manually. The rafts have certain gear, such as boarding nets, painters, sea anchors, paddles, rainwater catchments, and an emergency pack, containing first-aid equipment, water, seasickness tablets, flares, and rockets.

As imported, the articles were deflated and packed in wooden cases and brought in as part of the cargo of the importing vessels. When carried on vessels as lifesaving equipment, they are in so-called valise stowage, in metal bond raised stowage, or in fiberglass stowage, all presumably so arranged that they may be easily available in time of emergency. In use, they are either thrown overboard, lowered by means of a davit, or floated away from the disabled vessel. Inflation is apparently immediate upon release of the carbon dioxide and may be done before or after the raft is put into the water.

There does not seem to be any question but that the purpose and use of the rafts are as a means of survival, in the event of disaster at sea or upon other waters, and that, in this respect, they are similar to lifeboats.

Under the chapter heading "Rules of Construction," 1 U.S.C., section 3, provides that—

The word "vessel" includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water.

The issue as to what constitutes a vessel, as distinguished from articles upon which customs duties are imposed, has been before this and our appellate court frequently enough since the expression of the rule in the case of *The Conqueror*, *supra*, so that numerous facets of the problem have been explored, and the basic elements of the distinction have been set forth as rules of decision. See, among others, *Thayer* v. *United States*, 2 Ct. Cust. Appls. 526, T.D. 32252; *Hitner Sons Co.* v. *United States*, 13 Ct. Cust. Appls. 216, T.D. 41175; *United States* v. *Porto Rico Coal Co.*, 17 C.C.P.A. (Customs) 288, T.D. 43716; *United States* v. *William Herman Wepner*, 32 C.C.P.A. (Customs) 30, C.A.D. 282; and *Tregoning Boat Co.* v. *United States*, 15 Cust. Ct. 196, C.D. 971.

In the *Thayer* case, the subject was racing shells and, having in mind the definition of vessels in section 3, Revised Statutes, from which the definition above quoted in 1 U.S.C., section 3, was derived,

our appellate court ruled that to be a vessel there must be an element of practicality in the use of the article as a means of transportation on water. Such element of practicality was lacking in the case of racing shells, and they were, consequently, held not to be vessels.

The subject of the *Hitner* case was the hulk or ruins of an old Canadian cruiser, shown to be fit for nothing but scrap or junk, which was towed to the United States to be broken up for that purpose. In holding that such a hulk was not a vessel but was subject to duty as imported articles, the court ruled:

* * * In order to come within the definition of a "vessel" as fixed by section 3, Revised Statutes, the service upon which the thing in question can engage must be a maritime service. It must have some relation to commerce or navigation, or at least some connection with a vessel employed in trade. It must be engaged in, or in some sense related to commerce and navigation.

In the *Porto Rico Coal Co.* case, it was held that whether or not a vessel is documented is not the test of dutiability, and, in the *Wepner* case, it was pointed out that Congress was aware of the nondutiable status of vessels and had taken such steps as it deemed advisable in the matter, referring particularly to the provision for "motor boats" in paragraph 370, *supra.*

The *Tregoning* case involved a lifeboat hull, made of wood, imported as cargo, and not as part of the equipment of the importing vessel. It was shown that, in the condition in which it arrived, it could accommodate 12 persons, was capable of being used for the purpose of transporting persons over water, and that it had been constructed in accordance with American and Canadian lifeboat laws for that purpose. After a review of the cases hereinbefore cited, as well as others, this court held that such an article was a vessel, and not being of the character of vessels specifically provided for in the tariff act, viz, those provided for in paragraph 370, *supra*, was not subject to duty under the said act.

Applying the rules in those cases to the facts in the case at bar, we are of the opinion that the liferafts before us are "vessels" within the definition of that term, as codified in 1 U.S.C., section 3, and as that term has been judicially defined in the cited cases. They are contrivances used, or capable of being used, as a means of transportation on water; the service upon which they are capable of being engaged is a maritime service; and their use is practical. They are not within the class of vessels which Congress has made subject to duty, i.e., motorboats, yachts, or pleasure craft, and, while possibly not of the general shape and outline of what is ordinarily called to mind by the use of the word "vessel," nevertheless, they meet every requirement of statutory definition and of the judicial construction of the laws involved.

The brief filed on behalf of the defendant contains numerous arguments against holding the involved liferafts to be vessels, most, if not all, of which are answered by the holdings in the cited prior cases. Thus, the argument that if the liferafts are exempt from customs taxation as vessels, there is no other provision for taxing them, based upon tonnage, registration, enrollment, etc., is answered in the *Porto Rico Coal Co.* case, *supra*, wherein it was held that such matters are not the test of dutiability under the tariff laws. Also, the argument that they are intended only for emergency and, hence, only temporary use, is answered in the *Tregoning* case, wherein it was held that under the statutory definition of "vessel" and as the term has been construed by the courts, "present and continuous use as a means of transportation on water is not required; capability of practical and substantial use is sufficient."

It seems to us that the only point raised in the brief filed on behalf of the defendant which has not been discussed herein is that, in their imported condition, i.e., deflated and packed in wooden transportation cases, the articles are not within the category of vessels, but partake, instead, of the nature of articles intended to be sold, rather than used, in commerce.

We are of the opinion that the fact that the articles as imported were deflated and packed in wooden transportation cases does not affect their nondutiable status. Authority for this view is to be found in *Thornley & Pitt et al.* v. *United States*, 18 C.C.P.A. (Customs) 265, T.D. 44428, holding that, where articles in their imported condition are otherwise suitable for use as vessels, those measures, including dismantling and separate packing of parts, necessary for transportation do not affect the character of the article as a vessel. It is, of course, apparent that the deflating of the liferafts and their package in wooden transportation cases were effected solely for the purpose of transportation and that they were otherwise, in their imported condition, suitable for use as vessels.

The protest claim for entry free of tariff duties is, therefore, sustained, and judgment will issue accordingly.