**SEAGULL MARINE, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**C.D. 4814.**

**No. 78–9–01574.**

United States Customs Court.

Aug. 1, 1979.

Glad, Tuttle & White, Los Angeles, Cal. (Edward N. Glad, Los Angeles, Cal., on the briefs), for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D. C., Joseph I. Liebman, Atty. in Charge, Field Office for Customs Litigation, New York City (Susan C. Cassell, New York City, on the brief), for defendant.

*On Plaintiff's Motion and Defendant's Cross-Motion for Summary Judgment*

RICHARDSON, Judge:

The merchandise in this action consists of inflatable liferafts exported from England and entered at Los Angeles-Long Beach, California, in March, 1977. The liferafts were classified in liquidation under TSUS item 696.05 as modified as yachts or pleasure boats, valued not over $15,000 each, at the duty rate of 2 *per centum ad valorem.* The importer contends that the liferafts are exempt from duty as "vessels" in accordance with general headnote 5(e) of the TSUS. And the Government, while conceding the classification to be erroneous, contends that the liferafts should be classified under TSUS item 696.35 as modified as pneumatic craft not specially provided for, not of a type designed to be chiefly used with motors or sails, at the duty rate of 6 *per centum ad valorem.*

The case is before the court on motion and cross-motion for summary judgment, and the essential facts in the case are not in dispute. It appears that the subject liferafts have a carrying capacity of from 4 to 16 persons, are made of a rubber covered fabric, with sides consisting of 2 inflatable tubes with inflatable arches and opening at one end, are inflated by means of a carbon dioxide cylinder and valves which are parts of the equipment of each raft and which can be activated either automatically or manually, are equipped with gear such as painters, sea anchors, paddles, rainwater catchments, an emergency pack containing first-aid equipment, water, seasickness tablets, and flashlights, and are imported in deflated condition packed either in a low profile canister or a valise. Additionally, the parties concede that the merchandise in issue is in all material respects the same as that in *Thornley & Pitt, C. J. Hendry Co. v. United States,* 48 Cust.Ct. 134, C.D. 2325 (1962) which plaintiff argues is *stare decisis* of the issue here.

In *Thornley & Pitt, C. J. Hendry Co. v. United States, supra,* the liferafts, com-

posed in chief value of india rubber and imported as cargo, had been classified in liquidation under paragraph 1537(b) of the Tariff Act of 1930, as modified by T.D. 53865 and T.D. 53877, as manufactures of india rubber, at the duty rate of 12½ *per centum ad valorem*, and the importer primarily claimed that the liferafts are "vessels" within the rule expressed by the Supreme Court in *The Conqueror*, 166 U.S. 110, 17 S.Ct. 510, 41 L.Ed. 937 (1897), and not subject to tariff duties. The First Division of the Customs Court, speaking through Mollison, J., sustained the importer's primary claim. The court said (p. 137):

. . . we are of the opinion that the liferafts before us are "vessels" within the definition of that term, as codified in 1 U.S.C., section 3, and as that term has been judicially defined in the cited cases. They are contrivances used, or capable of being used, as a means of transportation on water; the service upon which they are capable of being engaged is a maritime service; and their use is practical. They are not within the class of vessels which Congress has made subject to duty, i. e., motorboats, yachts, or pleasure craft, and, while possibly not of the general shape and outline of what is ordinarily called to mind by the use of the word "vessel," nevertheless, they meet every requirement of statutory definition and of the judicial construction of the laws involved.

The Government contends that the doctrine of *stare decisis* is not applicable here because *Thornley & Pitt* is clearly erroneous, and has in essence been overruled by our appellate court. Defendant argues that the liferafts in issue are not "vessels" because they are not used for transportation, being at best designed to permit the occupants to "float" or "drift" until rescued, which activity defendant does not deem to constitute transportation. Defendant further argues that the liferafts are not "vessels" because they are not involved in any commercial or maritime service, citing *United States v. Bethlehem Steel Co. et al.*, 53 CCPA 142, C.A.D. 891 (1966), and touting the "relative unseaworthiness" of the rafts

as compared to the midbodies involved in *Bethlehem Steel*. And finally, defendant argues that the competing tariff provisions which confronted the *Thornley & Pitt* court are different from the competing tariff provisions which confront this court today in this case, noting that "specificity has replaced generality", with the result that *Thornley & Pitt* is rendered inapplicable thereby.

Plaintiff counters with the argument that *Bethlehem Steel* did not overrule *Thornley & Pitt* by excluding liferafts from the definition of the term "vessel", and with the further argument that defendant's remaining arguments have all been answered in *Thornley & Pitt* which has not been shown by defendant to be erroneous.

The court agrees with plaintiff. The court does not find defendant's arguments to be persuasive of the existence of error in the well reasoned opinion of Judge Mollison in *Thornley & Pitt* who, among other things, discussed all of the principal cases touching upon the subject of vessels dating back to *The Conqueror, supra*, as well as the statutory definition of the term "vessel" as set forth in 1 U.S.C., section 3, before concluding that the liferafts met every requirement of statutory definition and of judicial construction of the laws involved.

The fact that the liferafts in issue merely float and do not conform in shape to the conventional shape of boats as an aid to propulsion is of no moment. Even prior to *The Conqueror, supra*, the courts recognized that rafts were "vessels" although possessing no means of propulsion except that imparted by action of currents or waves. See *United States v. One Raft of Timber*, 13 F. 796 (1882); *Seabrook v. Raft of Railroad Cross-Ties*, 40 F. 596 (1889). In *Seabrook* the court said (p. 598). "The first vessels were rafts. The raft is the parent of the modern ship." Moreover, the status of the raft as a "vessel" is recognized in the Tariff Schedules where, under item 696.60, only rafts (among other things) which are not "vessels" are made dutiable under the

*eo nomine* provision for rafts.\* And it is to be noted that these vehicles of burden were not among the classes of watercraft referred to in *dicta* in *The Conqueror, supra*, at pp. 117–118, i. e., pleasure boats, as indicative of boats responding to tariff descriptions of "manufactures" or "other articles".

The decision of our appellate court in *United States v. Bethlehem Steel Co. et al., supra*, does not overrule the decision of this court in *Thornley & Pitt. Bethlehem Steel* went no further than to hold that watercraft designed and intended for uses other than as a means of transportation on water do not come within the meaning of the term "vessel", the court there concluding that a part of a vessel (midsection) is not a "vessel". However, in *Thornley & Pitt*, as in the case at bar, the liferafts, although considered a species of inferior craft, were unquestionably designed and intended for use solely as a means of transportation on water, albeit for temporary, emergency use. And since size and structure *per se* are not determinants of the status of a structure as a "vessel" under statutory definitions of the term (see *United States v. Bethlehem Steel Co. et al., supra*, at p. 152), the service performed by these liferafts, whether or not actually used on a voyage, must be regarded as a useful and valuable *maritime* service. By contrast, the service performed by the midsection in *Bethlehem Steel* was not a *maritime* service, but merely the fulfillment of a *construction* service.

The attempted differentiation between the competing tariff provisions before the *Thornley & Pitt* court and before this court *vis-à-vis* the instant case is more illusory than real. The provision in item 696.35 for pneumatic craft is residual, being qualified, among other things, by the limitation "not specially provided for" which appears in the superior heading preceding the item. And the provision merely reflects a redistribution under the TSUS of articles theretofore classified under paragraph 1537(b) of the 1930 Tariff Act from which item 696.35

was derived in part without rate change. See *Tariff Classification Study* (1960), *Submitting Report*, p. 21, *Proposed Provisions*, p. 519, and *Schedule 6, Part 6*, p. 327. Consequently, item 696.35 was not intended to represent a change in classification practice from the 1930 Act; and can in no wise be said to be a legislative assault upon the efficacy or impact of *Thornley & Pitt* in excluding pneumatic liferafts from classification under paragraph 1537(b).

Thus, unless shown to be erroneous, *Thornley & Pitt* continues to be viable precedent under the TSUS for the holding that liferafts of the pneumatic variety are specially provided for under the provision for "vessels" in general headnote 5(e). Since no such error has been shown, for the reasons stated, the holding in *Thornley & Pitt, C. J. Hendry Co. v. United States, supra*, is *stare decisis* of the issue here, and the court so holds. See *United States v. L. Batlin & Son, Inc.*, 487 F.2d 916, 61 CCPA 17, 19, C.A.D. 1111 (1973).

Plaintiff's motion for summary judgment is granted, and defendant's cross-motion for the same relief is denied. Judgment will be entered accordingly.

---

\* The articles most readily called to mind as falling within this dutiable category would be the stationary raft one frequently sees at a bathing beach anchored offshore in deep water, and not utilized for the transportation of people or things.